**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Timothy Taber, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent ("SA") with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been so since May 2018. I have received formal training in conducting criminal investigations at the Federal Law Enforcement Training Center in Glynco, Georgia. Prior to becoming a SA with HSI, I was an Intelligence Analyst with the Federal Bureau of Investigation for approximately ten years. In 2005, I graduated from Northeastern University with a bachelor's degree in criminal justice. In 2006, I graduated from Suffolk University with a master's degree in criminal justice.

2. I am currently assigned to HSI Boston, Massachusetts Document and Benefit Fraud Task Force ("DBFTF"), which is comprised of law enforcement agents and officers from federal, state, and local agencies. As part of DBFTF, I am responsible for conducting investigations involving but not limited to the manufacturing, counterfeiting, alteration, sale, and use of identity documents and other fraudulent documents to evade immigration laws or for other criminal activity. Due to my training and experience, as well as from interactions with other law enforcement officers, I am familiar with the methods, routines, and practices of document counterfeiters, vendors, and persons who fraudulently obtain or assume false identities.

3. I make this affidavit in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for historical cell tower information associated with the cellular telephone assigned call number (832) 577-1251 (the "Subject Phone"). The relevant records are stored at premises controlled by Sprint Corporation ("Sprint"), a wireless telephone service provider headquartered at 6480 Sprint Parkway, Overland, KS 66251. The information to be searched is described in the following paragraphs

and in Attachment A.  The requested warrant would require Sprint to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4. Presently, I am investigating Pedro Wilson Hernandez-Castillo ("HERNANDEZ-CASTILLO") for aggravated identity theft, in violation of 18 U.S.C. § 1028A (the "Subject Offense").

5. On June 29, 2020, this Court issued a criminal complaint charging HERNANDEZ-CASTILLIO with illegal re-entry into the United States after deportation, in violation of 18 U.S.C. §§ 1326(a) & (b)(2).  On December 30, 2020, a federal grand jury issued an indictment charging the same.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to establish the probable cause required for the requested warrant and does not set forth all of my knowledge about this matter.

## FACTS ESTABLISHING PROBABLE CAUSE

7. On or about June 15, 2020, Massachusetts State Police ("MSP") stopped HERNANDEZ-CASTILLO in Worcester, Massachusetts for operating a cellular phone while driving, in violation of Massachusetts General Laws chapter 90, section 13B.

8. After stopping HERNANDEZ-CASTILLO, the trooper requested his driver's license and registration.  In response, HERNANDEZ-CASTILLO provided a fake Puerto Rican driver's license and unsigned social security card ending in 0227 in the name of Rafi Otero Pagan.

9. Upon returning to his vehicle, the trooper ran the driver's license through CJIS and noted that: (1) the height of Pagan listed in CJIS was different than the height on the driver's license; (2) there was no photograph of Pagan in CJIS; and (3) the license was issued the previous year, in 2019. The trooper returned to HERNANDEZ-CASTILLO and asked him to recite the number on the social security card, which HERNANDEZ-CASTILLO could not do.

10. Upon receiving a photograph of Pagan from the Puerto Rican Police Department, the trooper concluded that the photograph did not resemble HERNANDEZ-CASTILLO. At some point, the trooper placed HERNANDEZ-CASTILLO under arrest and, at the barracks, MSP fingerprinted HERNANDEZ-CASTILLO.[1]

11. At the time of his arrest, HERNANDEZ-CASTILLO had two cell phones on his person and provided the Subject Phone as his phone number and his address as 1059 Pleasant Street, Worcester. Sprint records identify the subscriber of the Subject Phone as "Wilsom Castillo."

12. At some point after his arrest, HERNANDEZ-CASTILLO's daughter, Wendelys Hernandez, retrieved his personal belongings, including his cell phones. Hernandez provided her address to MSP as 21 Salisbury Street, Apartment 11, Worcester.[2]

13. According to public records, 1059 Pleasant Street is a single-family home owned by Maria Rodriguez.

---

[1] At some point, Immigration and Customs Enforcement officials determined that HERNANDEZ-CASTILLO's prints from his June 2020 arrest matched the prints in law enforcement databases and took him into custody. HSI later confirmed that HERNANDEZ-CASTILLO's fingerprints from his June 2020 arrest match the fingerprints in his cedula documentation obtained from the Dominican Republic.

[2] I am aware that Hernandez is HERNANDEZ-CASTILLO's daughter based on the contents of his Alien File ("A-File"). I also learned from the A-File that Wendelys's mother is Maria Rodriguez.

14.     In July 2020, the Social Security Administration confirmed that the social security number ending in 0227 does belong to Rafi Nehemias Otero Pagan.

15.     In September 2020, Experian provided a credit report for Rafi Otero Pagan, which indicated a credit check by Capital One on or about May 19, 2020.

16.     According to a CLEAR report, Pagan's address was listed as 1059 Pleasant Street, Worcester.  This address was confirmed on or about May 19, 2020.

17.     HSI identified the real Rafi Otero Pagan, who presently resides in Ohio.  On October 22, 2020, agents from United States Border Patrol Detroit Sector Intelligence Unit interviewed Pagan in Ohio.  During the interview, Pagan provided his complete name of Rafi Nehemias Otero-Pagan.  Otero-Pagan told authorities that he was born in Puerto Rico and traveled to Ohio in June 2013.  Otero-Pagan provided his phone number, which was a different number than the Subject Phone.

18.     Otero-Pagan informed authorities that he began having problems with his identity information approximately eight years ago while residing in Puerto Rico.  Otero-Pagan further informed authorities that approximately five years ago, he lost his wallet, which contained his driver's license and social security card.  Otero-Pagan confirmed that he has never resided or traveled to Massachusetts and does not have any relatives that reside in Massachusetts.

19.     When authorities showed Otero-Pagan his Experian credit report, Otero-Pagan told authorities that he did not recognize the May 19, 2020 credit check from Capital One.  Otero-Pagan further told authorities that he did not apply for anything from Capital One during that period and at that time, he could not open or be approved for new credit accounts.

20.     In December 2020, in response to a grand jury subpoena, Capital One provided that on May 20, 2020, at approximately 12:13 am EDT, "Rafi nehemias Otero" applied for a

Walmart credit card.[3] The application included the email address of "rafiotero73@gmail.com," the address of 1059 Pleasant Street, Worcester, and the phone number as the Subject Phone. The application also included Otero-Pagan's actual date of birth and social security number.

21. In December 2020, Google provided the subscriber information associated with the email address rafiotero73@gmail.com. The account was created on May 14, 2020, at approximately 5:02 UTC,[4] using IP address 66.168.119.149. From May 14, 2020 until HERNANDEZ-CASTILLO's June 15, 2020 arrest, May 14th is the only date that the user of the rafiotero73@gmail.com account logged in or out of the email account.

22. IP address 66.168.119.149 is owned by Comcast Communications. As of May 14, 2020, the IP address was assigned to Estephany Hernandez, at 21 Salisbury Street, Apartment 11, Worcester, Massachusetts (i.e. the same address provided by Wendelys to MSP when she retrieved HERNADEZ-CASTILLO's belongings). The email address associated with the IP address account was "wendellys@charter.net."

23. According to call detail records for the Subject Phone, the Subject Phone received two calls on May 14, 2020 at approximately 12:01 AM EDT and 1:01 AM EDT. The phone number of the incoming calls was (202) 455-8888. This phone number is a number used by Google for verification requests.

---

[3] I believe that Experian reflected the credit check as May 19, 2020 because Experian is headquartered in Costa Mesa, California. Thus, Experian's times would be three hours behind EDT.

[4] UTC refers to Universal Time Coordinated, which is effectively eastern daylight time (EDT) plus 4 hours. Thus, May 14, 2020 at 5:02 AM UTC would convert to May 14, 2020 at 1:02 AM EDT.

24.     In addition, on June 15, 2020, after his arrest at approximately 8:15 PM EDT, HERNANDEZ-CASTILLO made three phone calls between 11:14 PM EDT to 11:23 PM EDT. Two of the three calls were made to a phone number believed to belong to Wendelys.

25.     In light of the above information, I am seeking the historical cell cite data of the Subject Phone, from May 1, 2020 to July 1, 2020, to confirm that HERNANDEZ-CASTILLO was, in fact, the user of the Subject Phone. In addition, I seek to determine the Subject Phone's location on May 14, 2020 and June 15, 2020.

26.     In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

27.     Based on my training and experience, I know that Sprint can collect cell-site data about the Subject Phone. I also know that wireless providers such as Sprint typically collect

and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

28. Based on my training and experience, I know that wireless providers such as Sprint typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Sprint typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Subject Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## CONCLUSION

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

30.     I further request that the Court direct Sprint to disclose to the government any information described in Section I of <u>Attachment B</u> that is within its possession, custody, or control.  Because the warrant will be served on Sprint, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

                                       Respectfully submitted,

                                       Timothy Taber
                                       Special Agent
                                       Homeland Security Investigations

Time and Date:  **Feb 11, 2021**          2:03 p.m.

Notice is hereby provided that, pursuant to Federal Rule of Criminal Procedure 4.1, the affiant was sworn by telephone on the date and time indicated above.

Honorable David H. Hennessy
United States Magistrate Judge

8

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Sprint Corporation ("Sprint"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody Sprint. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Sprint, and they were made by Sprint as a regular practice; and

    b.    such records were generated by Sprint' electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Sprint in a manner to ensure that they are true duplicates of the original records; and

        2.    the process or system is regularly verified by Sprint, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                Signature